```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/17/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
GOTHAM ASSET LOCATORS INC.,                                       :
:
              Plaintiff,                                          :      14-CV-5 (JMF)
:
        -v-                                                       :      MEMORANDUM OPINION
:            AND ORDER
THE STATE OF ISRAEL,                                              :
:
              Defendant.                                          :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Gotham Asset Locators Inc. ("Gotham") brings suit against the State of Israel, seeking compensation for work it performed on Israel's behalf related to property in the United States in which Israel has an interest. Israel has moved to the dismiss the Amended Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons discussed below, the motion to dismiss is GRANTED and the Amended Complaint is dismissed.

## BACKGROUND

The following facts, drawn from the Amended Complaint, are assumed to be true for purposes of this motion. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 130 S. Ct. 2869 (2010).

This action arises out of the disposition of the estate of Minnie Miller. Ms. Miller executed a last will and testament in 1982, in which she left her brother a life estate in property located at 2071 Haring Street, Brooklyn, New York (the "Haring Street Property"). (Am. Compl. (Docket No. 5) ¶¶ 7-9). Ms. Miller's will directed that, upon her brother's death, the property was to be sold, and the net proceeds were to be "divided into two equal parts," one to be

paid to the State of Israel and the other part to be paid to the Jewish Child Care Association of New York ("JCCA"). (*Id.* ¶ 9). In December 1994, after Ms. Miller and her brother had both died, the will was admitted for probate to the Kings County Surrogate's Court. (*Id.* ¶¶ 7, 10-11). The Haring Street Property, however, was not sold as directed by the will; instead, over the next few years, a series of fraudulent deeds were recorded with the New York City Register's Office, conveying the property to others who had no interest in the estate, and encumbering the property with mortgages. (*Id.* ¶¶ 13-22). Eventually, foreclosure proceedings were instituted on the basis of those unpaid mortgages as well as unpaid New York City taxes. (*Id.* ¶ 23).

In early 2007, the JCCA and the Jewish National Fund hired Gotham, an "asset location and collection company," to represent their interests in the estate proceedings. (*Id.* ¶ 24). Gotham performed "research and due diligence" on the Haring Street Property, eventually "piecing together what was going on in regards to the property, and learn[ing] of the various fraudulent Deeds and mortgages that had been recorded against the property." (*Id.* ¶¶ 25, 27). Gotham then took a number of legal steps in an attempt to clear title to the property and prepare it for sale. First, it obtained an order in the tax lien foreclosure action clearing title of some of the fraudulent deeds and mortgages. (*Id.* ¶ 29). Gotham then moved to appoint Richard Altman, an officer of the JCCA, as administrator of Ms. Miller's estate. (*Id.* ¶¶ 31-32). At that point, representatives of the State of Israel contacted Gotham, seeking to have Israel's interests represented in the estate proceedings as well. (*Id.* ¶ 32). After several years of litigation, the Kings County Surrogate's Court appointed both Altman and Sonia Kisslevich — Israel's nominee — as co-administrators of the estate. (*Id.* ¶ 33). Gotham then initiated an action against tenants and squatters who had been residing at the Haring Street Property, and secured their agreement to vacate the premises. (*Id.* ¶¶ 35-37). Gotham also negotiated with the New York

2

City Environmental Control Board to reduce penalties that had been assessed against the property (*id.* ¶¶ 43-44), and, most recently, filed another quiet title action because the previous order had not cleared title to all of the property's tax lots. (*Id.* ¶ 41).

On January 2, 2014, Gotham filed the instant lawsuit, seeking to collect money damages from the State of Israel for work that it performed to Israel's benefit. (Docket No. 1). In particular, Gotham contends that that Israel will benefit from half of the proceeds of the eventual sale of the Haring Street Property, but "contributed absolutely nothing" to the work needed to clear title to the property and prepare it for sale. (Am. Compl. ¶¶ 49-54). Gotham seeks compensation under theories of unjust enrichment and *quantum meruit*. (*Id.* ¶¶ 59-72).

Gotham's initial Complaint invoked this Court's subject-matter jurisdiction on the ground of diversity of citizenship, under Title 28, Section 1332(a)(4) of the United States Code. (Compl. (Docket No. 1) ¶ 1). On January 23, 2014, the Court issued an Order noting that the only possible basis for jurisdiction in this action was the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330(a), and directed Plaintiff to amend the Complaint to allege subject matter jurisdiction under the FSIA, if appropriate. (Docket No. 2). Plaintiff did so on January 28, 2014, and Israel moves to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Docket Nos. 5, 6).

## DISCUSSION

It is well established that "the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court," *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989), and that, "[u]nder the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies," *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007). Initially, "the defendant [must] present[] a prima facie case

3

that it is a foreign sovereign," at which point the burden shifts to the plaintiff to submit "evidence showing that, under exceptions to the FSIA, immunity should not be granted." *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993). The ultimate burden of persuasion remains with the foreign sovereign. *Id.* "In other words, in assessing whether a plaintiff has sufficiently alleged or proffered evidence to support jurisdiction under the FSIA, a district court must review the allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and — if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue — resolve disputed issues of fact." *Robinson v. Gov't of Malay.*, 269 F.3d 133, 141 (2d Cir. 2001).

Here, there is no dispute that Israel is a foreign sovereign, so Plaintiff has the burden of showing that an exception to FSIA immunity applies. Plaintiff makes two arguments. First, it contends that jurisdiction is proper under the FSIA's "immovable-property" exception (Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n Mem.") (Docket No. 11) 10-11), pursuant to which "[a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which rights in property in the United States acquired by succession or gifts or rights in immovable property situated in the United States are in issue." 28 U.S.C. § 1605(a)(4). Second, Plaintiff asserts that Israel "consented to the jurisdiction of this Court" by petitioning the Kings County Surrogate's Court to have its nominee appointed as the co-administrator of the Miller estate. (Pl.'s Opp'n Mem. 3-4). The Court will address each in turn.

**A. Immovable-Property Exception**

In disputing whether the immovable-property exception applies here, both parties understandably focus on the Second Circuit's decision in *Mission of India*, a case concerning whether a suit by New York City against foreign states to establish the validity of tax liens

implicated "rights in immovable property."  (Pl.'s Opp'n Mem. 10-11; Def.'s Mem. Law Supp. Mot. Dismiss ("Def.'s Mem.") (Docket No. 8) 6-7; Def.'s Reply Mem. Law (Docket No. 13) 2-4).  In that case, the Second Circuit held that the exception applied to:

> any case where what is at issue is: (1) the foreign country's rights to or interest in immovable property situated in the United States; (2) the foreign country's use or possession of such immovable property; or (3) the foreign country's obligations arising directly out of such rights to or use of the property.

446 F.3d 365, 374 (2006).  Applying that standard, the Court of Appeals concluded that New York City's suit could proceed because it concerned "the extent of [the foreign sovereigns'] obligations under local law (here, property taxes) arising directly out of their ownership of real property in the United States."  *Id.* at 376.  The Supreme Court affirmed, reasoning that "[a] tax lien . . . inhibits one of the quintessential rights of property ownership — the right to convey," and that a suit to establish the validity of a lien therefore "plain[ly] . . . implicates rights in immovable property."  551 U.S. at 198-99 (internal quotation marks omitted).

The Second Circuit's decision in *Mission of India* is indeed critical to the inquiry in this case, but less for its articulation of the three categories quoted above than for its emphasis on the immovable-property exception's "at issue" requirement.  As the Court explained, by its plain terms, the exception's "application is limited to cases in which rights in such real estate 'are in issue.'  Thus, it does not apply to disputes that arise out of such rights in real estate but do not actually place them at issue."  446 F.3d at 369 (citing *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1523 (D.C. Cir. 1984) (Scalia, J.)).  In *Mission of India*, there was "no question that . . . the property interest involved [was] actually in dispute," so the Court's analysis ultimately turned on "what sorts of property interests would qualify" for the immovable-property exception rather than on "what it means for a property interest to actually be 'in dispute.'"  446 F.3d at 375 n.14.  Nevertheless, looking to then-Judge Scalia's decision in

5

*Reclamantes* (which looked, in turn, to the international understanding of sovereign immunity when the FSIA was enacted), the Court did adopt a definition of what it means for a property interest to be at issue: that "the dispute in question must actually arise directly out of the property interest in question." *Mission of India*, 446 F.3d at 377 (invoking *Reclamantes*). "We agree with the holding of *Reclamantes*," the Court declared, "*i.e.*, that the immovable property exception is limited to disputes directly implicating present property interests." *Id.* at 375.

Applying that rule here, Plaintiff's attempt to invoke the immovable-property exception falls short, as the present dispute does not "directly implicat[e] present property interests" in any way. *Id.* Plaintiff's claims concern the work that it performed in relation to the Haring Street Property, and whether Plaintiff is entitled to recover from Israel for that work, based on a theory of quasi-contract. *See, e.g.*, *Smith v. More*, — F. Supp. 2d —, 2014 WL 1875929, at *5 (S.D.N.Y. May 9, 2014) (noting that "unjust enrichment and *quantum meruit* sound in quasi-contract"). If Plaintiff were to prevail on its claims, therefore, it would be entitled only to a money judgment from Israel; "resolution of those claims will not in any conceivable way affect property interests in, or rights to possession of, land located in the United States." *Reclamantes*, 735 F.2d at 1524. In other words, just like the plaintiff's claims in *Reclamantes*, Plaintiff's "claims for compensation [are] not 'property interests in real estate, such as a leasehold, easement or servitude, nor possessory rights, nor even rights to payment of money secured by an interest in land.'" *Mission of India*, 446 F.3d at 375 (quoting *Reclamantes*, 735 F.2d at 1523). Its "complaint sounds not in the law of real property," but in the law of contract (or, more precisely, quasi-contract). *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987); *see also Fagot Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 12 (1st Cir. 2002) (holding that the immovable-property exception did not apply to a suit for the

nonpayment of rent for property used as a consulate, reasoning that the dispute was, "first and foremost, a contract dispute").

Plaintiff is certainly correct that "without [Israel's interest in] the Property . . . there would be no dispute between Gotham and Israel" (Pl.'s Opp'n Mem. 3), but that does not suffice to invoke the immovable-property exception. The immovable-property exception "was not intended . . . to abrogate immunity for any action touching upon real estate." *MacArthur*, 809 F.2d at 921. Instead, the question is whether "rights in property are at issue *in the* [*particular*] *case*." *Universal Trading & Inv. Co., Inc. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 898 F. Supp. 2d 301, 313 (D. Mass. 2012) (concluding that rights in property were not at issue in that case, even though such rights were at issue in related litigation). Thus, for example, where a plaintiff seeks to recover for injuries sustained in a slip and fall on a foreign state's property, the state's interest in the property is no less an essential predicate of the claim than it is here. Yet it is well established that the immovable-property exception does not apply to slip-and-fall suits because they do not concern "the state's title or rights of use and possession." *Fagot Rodriguez*, 297 F.3d at 12. So too, Plaintiff's claims in this case do not concern Israel's "title or rights of use and possession" to the Haring Street Property. In the final analysis, there is no outcome in this case that could alter either party's rights in the property, interest in the property, or obligations arising directly out of rights in the property. Accordingly, the immovable-property exception does not apply.

## B. Implied Waiver

The Court understands Plaintiff's alternative contention — that Israel "consented" to jurisdiction — as an argument that Israel implicitly waived its sovereign immunity pursuant to Title 28, United States Code, Section 1605(a)(1). That section provides that "[a] foreign state

shall not be immune from the jurisdiction of courts of the United States" where "the foreign state has waived its immunity . . . by implication." The Second Circuit has emphasized that "the implied waiver provision of Section 1605(a)(1) must be construed narrowly," and "courts have been reluctant to find an implied waiver where the circumstances were not . . . unambiguous." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991). In this case, Israel did not waive its immunity, let alone unambiguously enough to justify retaining jurisdiction.

Admittedly, there is some authority for the proposition that a foreign state can waive its immunity by affirmatively prosecuting litigation in the United States. *See Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 201-203 (2d Cir. 1999) (citing *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992)). The Second Circuit, however, has called that theory "dubious." *Id.* Moreover, to the extent it is valid, the theory requires a "direct connection between the sovereign's activities in [the United States courts] and the plaintiff's claims for relief," *Siderman*, 965 F.2d at 722; *see also Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 558 (S.D.N.Y. 2001) ("[C]ourts considering implied waiver under the FSIA have expanded waiver only to the extent necessary to consider factually and legally related causes of action."). Here, whether or not the implied-waiver theory is valid, there is no direct connection between Plaintiff's claims in this suit and Israel's participation in the Surrogate's Court proceedings, where it simply acted to protect its interest in the property by having its nominee named as a co-administrator of the estate. (*See* Def.'s Reply Mem. 6 & n.5). Put simply, the connections between Israel's participation in United States-based litigation and Plaintiff's claims in this action are far too remote to support "unmistakable" or "unambiguous" waiver. *Shapiro*, 930 F.2d at 1017. Accordingly, Plaintiff's second argument fails.

**CONCLUSION**

The issue in this case is not whether Israel should pay its fair share for Plaintiff's efforts to secure and improve the Haring Street Property — efforts that appear to have benefitted Israel as much as they benefitted Plaintiff. Instead, the issue is whether the Court has jurisdiction to even reach the merits. For the reasons discussed above, the Court is compelled to conclude that it does not because, under the plain language of the FSIA, Israel is immune from suit in this Court. Accordingly, Defendant's motion to dismiss is GRANTED, and the case is dismissed. The Clerk of Court is directed to terminate Docket No. 6 and to close the case.

SO ORDERED.

Date:  June 17, 2014
       New York, New York

_____
JESSE M. FURMAN
United States District Judge